UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LLOYD'S SYNDICATE 457, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| VS. | § | CIVIL ACTION NO. H-16-03050 |
| FLOATEC LLC D/B/A FLOATEC SOLUTIONS, LLC, *et al.*, | § § § § § | |
| Defendants. | § | |

**ORDER**

**I.     Background**

The plaintiffs, a number of Lloyd's syndicates and maritime insurance companies, referred to in this order as "the Underwriters," moved for a partial final judgment under Rule 54(b). (Docket Entry No. 79). The court's July 27, 2017 Memorandum and Opinion granted Floatec's motion to dismiss, with prejudice, and denied American Global Maritime's motion to dismiss or compel arbitration. (Docket Entry No. 63). On August 28, 2017, before a final judgment was entered, the Underwriters filed a "precautionary" notice of appeal of the decision. The Fifth Circuit dismissed the appeal, without prejudice, pending mediation with the Circuit mediation program. (Docket Entry No. 66). Mediation was unsuccessful, and this court reinstated the case to the active docket. (Docket Entry No. 77). In this court, the Underwriters seek a partial final judgment to appeal the dismissal of the claims against Floatec. Floatec opposes this relief. (Docket Entry No. 81). For the reasons explained in detail below, the court grants the Underwriters' motion.

**II.    The Legal Standard**

Rule 54(b) of the Federal Rules of Civil Procedure provides:

1

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

FED. R. CIV. P. 54(b).

Rule 54(b) permits appeal from certain district court orders before every issue in the case is resolved. *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 9 (1980). A court may direct entry of a Rule 54(b) partial final judgment only if more than one claim for relief is presented or multiple parties are involved. *Samaad v. City of Dallas*, 940 F.2d 925, 929 (5th Cir.1991).

Before granting a Rule 54(b) motion, a district court must make two findings. *Haliburton Energy Servs., Inc. v. NL Indus.*, 2008 WL 269735, at *3 (S.D. Tex. July 2, 2008). First, the court must find that the judgment sought is final as "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Curtiss-Wright Corp.*, 446 U.S. at 7. Second, the court must find that there is no just reason for delay in entering the partial final judgment. *Id.* at 8. The second inquiry requires the court to "take into account judicial administrative interests as well as the equities involved." *Id.*

Rule 54(b) "reflects a balancing of two policies: avoiding the 'danger of hardship or injustice through delay which would be alleviated by immediate appeal' and 'avoid[ing] piecemeal appeals.'" *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 740 (5th Cir.2000) (quoting *PYCA Indus., Inc. v. Harrison Cnty. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1421 (5th Cir.1996)). A court should consider: "(1) the relationship between the adjudicated and the unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off

against the judgment sought to be made final; [and] (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like." *Haliburton*, 2008 WL 2697345, at *3 (quoting *Akers v. Alvey*, 338 F.3d 491, 495 (6th Cir.2003)). Rule 54(b) motions are "disfavored" and "should be granted only 'when there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal.'" *Precision Energy Servs., Inc. v. Thrubit, LLC*, 2013 WL 196674, at *4 (S.D. Tex. May 13, 2013) (quoting *PYUCA Indus., Inc.*, 81 F.3d at 1421).

## III. Analysis

The Underwriters' claims against Floatec and American Global Maritime arise out of losses from the failed offshore installation of Chevron's Big Foot extended tension-leg platform drilling rig. Floatec provided Chevron with "engineering design and analysis" and was responsible for "interface management for the entire project." (Docket Entry No. 32, at ¶ 18). As Chevron's insurers, the Underwriters claimed that Floatec negligently breached its duty of care to Chevron and that its engineering work proximately caused the tendon and rig collapse. (*Id.* ¶¶ 32–34, 36–38).

American Global Maritime was the "Marine Warranty Surveyor" for the project. Its duties included reviewing and approving engineering, design, and operational aspects of the construction project. (*Id.* ¶¶ 24–25). The Underwriters allege that American Global Maritime: (1) owed them a duty of care that it violated by failing to competently perform its Marine Warranty Surveyor duties, (*id.* ¶¶ 42–44); (2) negligently misrepresented the quality of its work as a Marine Warranty Surveyor and failed to adequately review the project engineering and design, (*id.* ¶¶ 46–49); (3) owed them a fiduciary duty, which it breached by improperly performing its work; and (4) these breaches caused the tendon failure and subsequent losses, (*id.* ¶¶ 54–59). The Underwriters also alleged that

3

both defendants were liable under Louisiana product-liability and redhibition law. (*Id.* ¶¶ 54–59, 61–64).

The parties do not dispute that the court's July 27, 2017 Memorandum and Opinion is an "ultimate disposition of an individual claim entered in the course of a multiple claims action." *Curtiss-Wright Corp.*, 446 U.S. at 7. All of the claims against Floatec were dismissed, with prejudice. The issue is whether, based on the factors courts consider in deciding Rule 54(b) motions, "there is no just reason for delay in entering final judgment." *Id.* at 8. As noted above, the factors are: (1) the relationship between the adjudicated and the unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; and (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. *Haliburton*, 2008 WL 2697345, at *3 (quoting *Akers*, 338 F.3d at 495).

The Underwriters argue that the claims against American Global Maritime "present different and non-overlapping issues" than the dismissed claims against Floatec, making it inappropriate to delay entering the judgment as to Floatec. (Docket Entry No. 79). The Underwriters explain that the July 27 Memorandum and Opinion distinguished between the claims against Floatec, which were dismissed because they were subrogated, and the claims against American Global Maritime, which were not dismissed because they were direct tort claims. The Underwriters argue that because of this difference, an appellate ruling on the claims against Floatec will not affect the resolution of the remaining claims. The Underwriters also argue that an appellate decision on this court's decision as to the order in which to resolve certain issues—ruling on the parties' Other Assured status before

4

ruling on arbitrability—will not affect the resolution of the claims against American Global Maritime because its contract with Chevron is not the same as Floatec's contract with Chevron. Finally, the Underwriters argue that because the claims against Floatec and American Global Maritime arise from the same set of facts, an immediate appeal will save judicial resources by allowing for a unified trial if the dismissal is reversed on appeal.

In response, Floatec argues that an immediate appeal from the partial final judgment granting its motion to dismiss "will place the Fifth Circuit in the position of having to address two distinct, yet in substance identical, appeals on the 'no right of subrogation' issue." (Docket Entry No. 81). Floatec also argues that the Underwriters have not shown that they will face "hardship or injustice through delay which would be alleviated by immediate appeal." (*Id.*). Floatec argues that if the appellate court reverses the ruling dismissing the claims against Floatec, the risk of duplicative trials is minimal because, on reversal, the Underwriters "would stand in Chevron's shoes and be subject to the dispute resolution clause requiring the . . . dispute be resolved in arbitration in California . . . ." (*Id.*).

The first factor courts consider is the relationship between the adjudicated and unadjudicated claims. In the July 27 Memorandum and Opinion, the court considered the Underwriters' "different arguments as to each defendant" and held that "both Floatec and American Global Maritime are Other Assureds under the Policy, and nothing in their contracts with Chevron or the applicable law limits their right to assert the subrogation waiver as a defense." (Docket Entry No. 63 at p. 15). Because both defendants were Other Assureds under the policy, the court dismissed the Underwriters' claims against Floatec, with prejudice, because they were subrogated claims. (*Id.* at p. 18). The claims against American Global Maritime, in contrast, were "pleaded as direct tort claims rather than as claims brought as a subrogee of Chevron." (*Id.* at pp. 18–19). Under

Louisiana's antisubrogation rule, American Global Maritime's tort claims "exist outside the contract between Chevron and American Global Maritime." (*Id.*). The court explained the distinction:

> [American Global Maritime's] briefing assumes that the claims against it are barred by the antisubrogation rule. But the Underwriters are not asserting Chevron's rights against American Global Maritime. The Underwriters could prevail under the Louisiana tort rules they cite without proving that American Global Maritime violated any duty it owed to Chevron, whether that duty arose in contract or tort. The Underwriters are asserting that, under Louisiana law, American Global Maritime owed a tort duty directly to the Underwriters and foreseeably harmed the Underwriters when it violated that duty. That is not a subrogation claim.

(*Id.* at p. 20). In short, the Underwriters' claims against Floatec were barred as subrogated claims, but the claims against American Global Maritime were tort claims that were not barred. The relationship of the pending claims to the resolved claims weighs in favor of directing a partial final judgment under Rule 54(b).

The parties concede that the second and fourth factors, the possibility that the need for review might be mooted by future developments in the district court and the presence or absence of a claim or counterclaim which could result in set-off against the judgment, do not weigh strongly either way.

The parties dispute the significance of the third factor, the possibility that the reviewing court might have to consider the same issue a second time. The Underwriters argue that the Fifth Circuit will not review the same issues twice because any judgment obtained against American Global Maritime will not be based on subrogation. (Docket Entry No. 79). Floatec responds that once the claims against American Global Maritime are resolved, the underlying issue of whether the Underwriters are subrogated to Chevron's rights with respect to the claims against both Floatec and American Global Maritime "will very likely" be an issue on appeal. (Docket Entry No. 81).

6

The Underwriters have the better argument. To the extent that the Fifth Circuit resolves the subrogation issue on appeal from a partial final judgment dismissing the Underwriters' claims against Floatec, that will clarify and help define and resolve the scope and basis of the claims against American Global Maritime. If the Fifth Circuit reverses this court's ruling as to Floatec, the Underwriters' claims against Floatec and American Global Maritime can proceed together. If the Fifth Circuit affirms, the Underwriters will have a final judgment against Floatec and the parties will have more certainty about this court's ruling on subrogation. *See Echols v. Gardiner*, 2014 WL 1341954, at *2 (S.D. Tex. Apr. 3, 2014) ("Should the appellate court disagree with this Court on the viability of Plaintiffs' claims against the City or Woodland Hills, it can remand for trial with the claims against [the other defendant]. If this Court's conclusions on all issues are affirmed, the City and Woodland Hills will have final judgment and the jury on remand will then hold a trial on simply Plaintiffs' claims against [the other defendant]. . . . Thus, if there is a remand, the parties will be able to proceed to trial with a clear understanding of the law applicable to Plaintiffs' claims."). This factor weighs in favor of entering a partial final judgment under Rule 54(b).

Finally, the court must consider "miscellaneous factors," such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, and expense. Although a partial final judgment would require the parties to litigate the remaining claims in this court and the dismissed claims against Floatec in the Fifth Circuit at the same time, a ruling from the Fifth Circuit will provide a clear answer to the Underwriters, Floatec, and American Global Maritime as to the scope of the issues at trial. The parties recently agreed to a 45-day extension of the deadline to file a reply to the motion to dismiss for lack of personal jurisdiction, an issue not relevant to the dismissed claims against Floatec. That the court's jurisdiction was not in question in the ruling dismissing the claims against Floatec, and the fact that jurisdiction over American

Global Maritime has not been fully briefed, indicate that a entering a Rule 54(b) judgment will not unduly delay the resolution of the claims against American Global Maritime in this court. Judicial economy weighs in favor of entering a Rule 54(b) partial final judgment.

**IV.  Conclusion**

The motion for entry of a partial final judgment under Rule 54(b), (Docket Entry No. 79), is granted. The court will separately enter a partial final judgment on the Underwriters' dismissed claims against Floatec.

SIGNED on February 6, 2018, at Houston, Texas.

Lee H. Rosenthal
Chief  United States District Judge