UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S LONDON AND CERTAIN INSURANCE COMPANIES SUBSCRIBING TO POLICY B0823EE110211, individually and as subrogees of CHEVRON U.S.A. INC., *et al.* | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 16-cv-03050 Jury Requested |
| AMERICAN GLOBAL MARITIME, INC., *et al*. | § § | |
| Defendants. | § | |

**Plaintiff Underwriters' Motion for Reconsideration and Correction of the Court's Rule 60(b) Ruling Regarding the Dismissal of Floatec LLC**

J. Clifton Hall III
Claude L. Stuart III
Karen K. Milhollin
Neil E. Giles
HALL MAINES LUGRIN, P.C.
Williams Tower, 64th Floor
2800 Post Oak Blvd.
Houston, Texas 77056-6125
Tel: 713.871.9000
Fax: 713.871.8962

*Attorneys for Plaintiffs Certain Underwriters at Lloyd's London
and Certain Insurance Companies Subscribing to Policy B0823EE110211,
individually and as subrogees of CHEVRON U.S.A. INC.*

**Plaintiff Underwriters' Motion for Reconsideration and Correction of
the Court's Rule 60(b) Ruling Regarding the Dismissal of Floatec LLC**

Certain Underwriters at Lloyd's London and Certain Insurance Companies Subscribing to Policy B0823EE110211 (Underwriters), move under Federal Rule of Civil Procedure 60(b)(1) for reconsideration and correction of error in the Court's Memorandum and Opinion (Docket Entry No. 127). Rule 60(b)(1) provides relief from mistakes, inadvertence, surprise and other errors. "Mistake" may encompass judicial mistake. *Oliver v. Monsanto Co.*, 56 F.R.D. 370, 372 (S.D. Tex. 1972), *aff'd sub nom*. *Oliver v. Home Indem. Co.*, 487 F.2d 514 (5th Cir. 1973) (citations omitted). Reconsideration is generally analyzed under the standards for a motion to alter or amend judgment under Rule 59(e) or a motion for relief from a judgment or order under Rule 60(b). *Kellogg Brown & Root Intern., Inc. v. Altanmia Commercial Mktg. Co. W.L.L.*, 07-2684, 2009 WL 514054, at *5 (S.D. Tex. Mar. 2, 2009) (citing *Hamilton Plaintiffs v. Williams Plaintiffs,* 147 F.3d 367, 371 n.10 (5th Cir. 1998)).

In denying Underwriters' Rule 60(b) motion, this Court ruled that Floatec never assumed liability for damage to Chevron's property, had no duty to insure Chevron for damage to Chevron's property, and therefore FloaTEC's CGL policy is not primary for any loss (assuming the CGL would cover professional negligence). (Docket Entry No. 127 at 12-13). These rulings relied in error upon superseded contract provision (section 9.3 of the Chevron-FloaTEC contract), which the Court quoted as support for its conclusion that FloaTEC never expressly assumed liability for damage to Chevron's property because FloaTEC's liability was to '"be determined at law"' (Docket Entry No. 127 at 12). This Court's mistaken reliance on the superseded contract provision led it to conclude that Floatec's "commercial liability insurance

did not need to be primary insurance for those damages or losses." (Docket Entry No. 127 at 12-13).

The original section 9.3 of the contract was replaced by Amendment 1 to the Chevron-Floatec contract. It provides that FloaTEC expressly assumes liability for damage to Chevron's property:

> 4. Section 9.3 of the Contract is amended in its entirety and is replaced with the following:
>
> In the event of physical loss or damage to all or part of the Property of Company Group, where that damage or loss arises out of this Contract, Contractor indemnifies Indemnitees against that loss or damage and against Claims against Indemnitees by other Persons for that loss or damage; provided however that Contractor's indemnity obligation to Indemnitees for reconstruction, replacement or repair of the same shall be limited to US$5,000,000.00 per occurrence, except in the event such loss or damage is the result of the gross negligence or willful misconduct of Contractor Group. Subject to the foregoing exception regarding the gross negligence or willful misconduct of Contractor Group, Company shall release, defend, indemnify, and hold Contractor Group harmless from and

AMENDMENT No. 1 to HULL, MOORINGS AND RISERS
ENGINEERING AND DESIGN CONTRACT No. BGF-Z029

2011-07-22_Final




1

FloaTEC MTD 00162

---

Case 4:16-cv-03050 Document 30-3 Filed in TXSD on 02/13/17 Page 42 of 57

> against the aforesaid suits, actions, Claims, or demands above the stated limit per occurrence, regardless of how such damage or loss is caused and whether said suit, action, Claim, or demand is based on the active, passive, contributory or concurrent negligence or other legal fault of Contractor.
>
> However, if the Property referred to in Section 9.2 is Property of a third party (namely, any Person other than members of Company Group and members of Contractor Group), Contractor's liability will be determined at law, to the extent it is not addressed by Section 9.15.

(Docket Entry No. 30-3 at 41 [Floatec MTD 00162]).[1] FloaTEC's agreement to indemnify Chevron for damage to its property is significantly different from the original provision relied on by the Court. It means that Floatec's commercial liability insurance was intended to be the primary insurance for such damage.

This Court has recognized that the CAR policy "*permits Other Assureds to alter coverage through contract*." (Docket Entry No. 111 at 44-46). *See Bott v. J.F. Shea Co., Inc.*, 388 F.3d 530 (5th Cir. 2004) (recognizing waiver of contractual right to coverage). FloaTEC contractually waived any rights under the CAR policy by expressly assuming responsibility for damage to Chevron's property arising from FloaTEC's work, by agreeing to insure its contractual obligation and make its own insurance primary, and by agreeing that Chevron's insurance would not contribute. This Court's conclusion that a purported Other Assured can contractually waive coverage under the CAR policy applies both to Underwriters' direct (unsubrogated) tort claims against Global Maritime and to Underwriters' subrogated claims against FloaTEC. In subrogation, Underwriters stand in Chevron's shoes and may enforce FloaTEC's contractual promises to Chevron.

The Court's analysis of the "other insurance" clauses of the CAR policy and FloaTEC's liability policy is inapplicable here. The "other insurance" clauses apply only if coverage under both policies is triggered. *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 210 (5th Cir. 1996) ("other insurance" clauses apply when the insured has *concurrent* coverage from more than one policy covering the same occurrence); *Graves v. Traders & Gen. Ins. Co.*, 214 So.

---

[1] Underwriters' original briefing relied upon the amended provision. (Docket Entry No. 41 at 42 (citing amended section 9.3)).

2d 116 (La. 1968) ("other insurance" clauses apply when there is double or concurrent coverage under different policies). There is no concurrent coverage here because FloaTEC contractually agreed Chevron's insurance would not contribute for damage caused by FloaTEC's work.

Whether FloaTEC's liability policy covers it for this loss is irrelevant because FloaTEC is bound by its contractual agreement to forego contribution from Chevron's insurance. Nevertheless, the liability policy does cover FloaTEC for this loss despite the professional liability exclusion. The exclusion is "limited" and expressly states it "does not apply to [FloaTEC's] operations *in connection with construction work* performed by [FloaTEC] or on [FloaTEC's] behalf." (Docket Entry No. 116-2 at 44). *See also Willbros RPI, Inc. v. Continental Cas. Co.*, 601 F.3d 306, 310 (professional liability exclusion did not preclude duty to defend allegations of defective construction work). And, if coverage is the lodestar for enforcing FloaTEC's contractually assumed liability, FloaTEC also maintained a professional indemnity policy that covers its professional liabilities for the Big Foot project.

The Court's conclusion that Underwriters cannot legally pursue Chevron's contract rights against FloaTEC because that would allow Underwriters to raise the contract obligations as a defense to *Chevron's* claims for coverage conflates coverage and subrogation. (Docket Entry No. 127 at 14). Chevron is the Principal Assured. The Special Conditions for Other Assureds does not apply to Chevron's coverage. There is no policy provision defeating *Chevron'*s coverage based on underlying contract obligations. The policy allows Chevron to control whether the benefits of the CAR policy are passed to Chevron's contractors. Chevron's contract with FloaTEC *prevents FloaTEC* from using Chevron's insurance to cover damage caused by FloaTEC's negligence. Underwriters paid Chevron's coverage claim; Underwriters are now

entitled to pursue Chevron's rights under the FloaTEC contract in subrogation. Standing in Chevron's shoes, Underwriters may legally enforce the contractual indemnities and liabilities that FloaTEC freely agreed to undertake, including indemnifying Chevron for the loss, making FloaTEC's insurance coverage primary, and making Chevron's insurance noncontributory.

**Conclusion**

The Court has relied on a contract provision that was amended. Under the amended provision, Underwriters have a valid claim for reimbursement against FloaTEC (and FloaTEC's insurer) since FloaTEC contractually agreed to be responsible for damage to Chevron property and that FloaTEC's insurance would be primary and non-contributory with Chevron's insurance.[2] FloaTEC should be held to its contractual agreements, including the waiver of coverage under the CAR policy. Underwriters request an expedited indicative ruling under Rule 62.1 in their favor.

Respectfully submitted,

By:  /s/      J. Clifton Hall III
J. Clifton Hall III
Attorney-in-Charge
(TX 00793204)(Fed. 20250)
chall@hallmaineslugrin.com
Williams Tower, 64th Floor
2800 Post Oak Boulevard
Houston, Texas 77056-6125
Tel.    713.871.9000
Fax    713.871.8962

*Attorneys for Plaintiffs Certain Underwriters at Lloyd's London and Certain Insurance Companies Subscribing to Policy B0823EE110211*

---

[2] Doc. 30-3 at 28-29 (Floatec insurance obligation Sec. 10.2(B); Sec. 10.3(C)(2)) (FloaTEC MTD 00149-150).

OF COUNSEL:
HALL MAINES LUGRIN, P.C.
Claude L. Stuart III
cstuart@hallmaineslugrin.com
(TX 19426620)(Fed. 13824)
Karen K. Milhollin
(TX 00790180)(Fed. 18038)
kmilhollin@hallmaineslugrin.com
Neil E. Giles
(TX 00784126)(Fed. 16782)
ngiles@hallmaineslugrin.com

<u>Certificate of Service</u>

      On December 28, 2018, I electronically submitted this document with the clerk of court for the U.S. District Court, Southern District of Texas, using the electronic case filing system. All counsel of record were served electronically or as authorized by Fed. R. Civ. P. 5(b)(2).

Andrew S. de Klerk
T. Patrick O'Leary
Brandon K. Thibodeaux
Frilot LLC
3700 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-3700
Tel:    504.599.8010
Fax:   504.599.8110
Email: adeklerk@frilot.com
Email: poleary@frilot.com
Email: bthibodeaux@frilot.com
*Attorneys for Floatec LLC d/b/a Floatec Solutions LLC*

Randall Treadaway
Brett M. Bollinger
Zaunbrecher Treadaway Bollinger LLC
406 N. Florida Street, Ste. 2
Covington, LA 70433
Tel:    985.871.8787
Fax:   985.871.8788
Email: Randy@ztlalaw.com
Email: Brett@ztlalaw.com

*Attorneys for American Global Maritime, Inc.*

      /s/    *J. Clifton Hall III*
      J. Clifton Hall III